UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

O'NEILL MARTINEZ,

**DECISION AND ORDER**
15-CV-0211-A

Plaintiff,

v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Plaintiff O'Neill Martinez, who is represented by counsel, brings this action

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the final decision of

Defendant Acting Commissioner of Social Security denying his applications for

Supplemental Security Income and Disability Insurance Benefits.  Presently before the

Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure.  Dkt. Nos. 11, 16.  For the reasons that follow, the

matter is remanded to the Commissioner for reconsideration of Plaintiff's residual

functional capacity.

## BACKGROUND

***A.  Procedural History.***  Plaintiff Martinez protectively filed for Supplemental

Security Income ("SSI") and Disability Insurance Benefits ("DIB") on September 28,

2010, alleging disability beginning January 1, 2009.  His initial applications were denied,

and a hearing followed before Administrative Law Judge ("ALJ") Nancy Gregg

Pasiecznik on February 8, 2012.  After the ALJ issued a decision finding that Plaintiff was not disabled, Plaintiff requested Appeals Council review of the hearing decision. On June 28, 2013, the Appeals Council denied Plaintiff's request, and the ALJ's determination became the Commissioner's final decision. T. 1-4, 10-38, 39-86, 87-88, 148-51, 152-58.[1] This action followed. Dkt. No 1.

**B. The ALJ's Decision.**  In applying the familiar five-step sequential analysis, as required by the administrative regulations promulgated by the Social Security Administration, *see* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff engaged in substantial gainful activity after the alleged onset date, but that work activity was an unsuccessful work attempt; (2) he had the severe impairments of lumbar disorder, hypertension, type II diabetes mellitus, and obesity; (3) his impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1.  The ALJ also found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the limitation of occasionally stooping or crouching; (4) Plaintiff was capable of performing his past relevant work as a parts clerk/ salesperson as it is generally performed in the national economy.  Notwithstanding this finding, the ALJ proceeded to determine that (5) there were jobs that existed in significant numbers in the national economy which could be performed by a person of Plaintiff's age, education, vocational background, and RFC.  T. 18-33. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act.  *Id.*

---

[1] Citations to "T.__" refer to the administrative transcript.

**DISCUSSION**

**A.  Scope of Review.**  A federal court should set aside an ALJ's decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence.  *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence.  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009). However, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

**B.  Medical Evidence.**  On September 3, 2008, Plaintiff Martinez reported to the Millard Fillmore Hospital Emergency Department with stabbing chest pain.  At that time, his blood pressure was 154/99, his glucose was 230, and he weighed 205 pounds.  Two stress tests administered were negative for ischemia (inadequate blood supply). A C-reactive protein ("CRP") blood test indicated a high risk of heart disease. T. 291-309.  A portable chest x-ray from the same date revealed no acute findings. T. 381.

A few days later, Plaintiff Martinez reported to his treating physician Dr. Raul Vazquez at Urban Family Practice for an annual exam and left-sided chest pain. Plaintiff had chest pain for two days, which was pressing in nature and aggravated by breathing.  His general health was stated as "excellent," he reported "feeling well," and was following a healthy diet. T. 376.  Plaintiff's past medical history included non-insulin dependent diabetes and hypertension. On physical examination, his blood pressure was 150/99.  Dr. Vazquez assessed Plaintiff with worsened hypertension, worsened diabetes mellitus Type II uncontrolled, and stable dyspnea and respiratory abnormality. Plaintiff was prescribed enteric-coated aspirin, Exforge, Glucovance, and Accu-check Aviva, placed on an American Diabetic Association diet, and urged to be complaint in taking antihypertensive medications.  T. 376-80.

From October, 2008, through January, 2009, Plaintiff Martinez returned to Dr. Vazquez for management of his hypertension and diabetes.  T. 344-46, 348-51, 357-60, 368-71.  In October, Dr. Vazquez noted that Plaintiff's hypertension had worsened.  T. 371.  In November, Plaintiff saw Dr. Vazquez following an abnormal electrocardiogram ("EKG").  The doctor assessed worsened hypertension and diabetes mellitus, hypercholesterolemia, stomach dyspepsia, cardiac dysrhythmia unspecified, and esophageal reflux.  Tricor and Nexium were added to Plaintiff's prescriptions.  T. 357-61.  In December, Plaintiff reported increased symptoms of diabetes, and stated that he was not taking his prescribed medications, but was compliant with his diet.  T. 348.  He also began complaining of neck pain and mild left shoulder pain.  *Id.*  Following a physical examination, Dr. Vazquez diagnosed Plaintiff with shoulder joint pain, and neck sprains and strains. T. 350-51.

Throughout his treatment, Plaintiff Martinez was continually urged to take his hypertension medication.  T. 346, 360, 371.  His self-monitored glucose levels ranged from 75-125 to 160-250 during this period.

On January 10, 2009, Plaintiff Martinez was transferred to Erie County Medical Center ("ECMC") after missing his usual evening insulin doses due to being placed under arrest.  T. 510.  He was treated with insulin and discharged to jail with a diagnosis of hyperglycemia. T. 510-11.

On January 26, 2009, Plaintiff Martinez saw Dr. Vazquez for a follow-up. His diabetes and hypertension were poorly controlled and worsening.  The doctor noted that Plaintiff was not taking his medication. T. 344-46.

Several months later, Plaintiff Martinez reported to Dr. Sandeep Dhindsa at the Diabetes/Endocrinology Center of Western New York on May 13, 2009, for diabetes treatment.  He complained of dizziness, polyuria, polydipsia, palpitations, and weight loss of 15 pounds.  Review of systems was positive for joint hand swelling; joint pain; stiffness in back; tiredness; fatigue; and corrective lens.  His blood sugar was high, for which Dr. Dhindsa prescribed Humalog and Metformin.  T. 430-433.  Blood tests dated May 20, 2009, revealed high glucose and high BUN/Creatinine ratio. T. 324.

Plaintiff Martinez returned to Dr. Dhindsa for a follow-up on May 27, 2009, reporting good activity level, water retention, weight gain, fatigue, and vision problems. His blood sugar was elevated.  The physical examination was unremarkable, with slightly elevated blood pressure.  Dr. Dhindsa increased Lantus and Metformin, decreased Humalog, and prescribed vitamin D.  T. 428-29.  Approximately eight months later, on January 27, 2010, Plaintiff reported to Dr. Dhindsa for a follow-up of diabetes

mellitus, hypertension, dyslipidemia, and sleep apnea. He had not been taking his hypertension medication because he ran out of them.  Review of systems was positive for anxiety.  On examination, Plaintiff was obese, his blood pressure was 190/100, and he had abdominal tenderness and ascites.  His glucose was 153 and his hemoglobin A1C was 11.4%.  Dr. Dhindsa increased Lantus and Humalog, discontinued Bystolic, and prescribed Lisinopril.  T. 426-427.

Plaintiff Martinez did not see a doctor again until October 15, 2010, when he reported to Dr. Karuna Ahuja at ECMC Internal Medicine.  Plaintiff complained of episodes of shortness of breath and dizziness that lasted two hours, throbbing hand pain and stiffness, and left arm pain that woke him from his sleep during the preceding four months.  Review of Plaintiff's symptoms was positive for palpitations; shortness of breath; heartburn; polyuria; and left arm pain. An examination was unremarkable except for hypertensive blood pressure of 152/111.  Plaintiff was assessed with diabetes mellitus Type II, hypertension, palpitation, hand pain, and leg pain.  X-rays were ordered.  T. 416-421.

On November 2, 2010, Plaintiff Martinez returned to Dr. Dhindsa for a follow-up appointment with complaints of tiredness/fatigue; chest pain; dyspnea; palpitations; burning pain and swelling in his joints; and skin rash under his eyes. No musculoskeletal abnormalities were noted upon examination, and blood pressure was normal with elevated heart rate.  Dr. Dhindsa assessed Plaintiff with uncontrolled diabetes mellitus Type II, hypertension, tachycardia, and dyslipidemia.  T. 424-425.

X-rays taken of Plaintiff Martinez's hands and left hip on December 23, 2010 were normal.  T. 521-22.  The following month, x-rays of Plaintiff's pelvis and left knee were also normal.  T. 452-53.

In January, 2011, Plaintiff Martinez went to ECMC to review his x-ray results. During a physical examination, he had tenderness at the T11 through L4 area with tenderness at the bilateral costovertebral angle area and in his groin area.  He was assessed with back pain and prescribed Tylenol, and an MRI of his thoracic-lumbar spine was ordered.  T. 523-24.

On January 12, 2011, Plaintiff Martinez underwent a consultative internal medicine examination by Dr. Nikita Dave.  Plaintiff reported being struck by a car while riding a bicycle in 1995, which caused him persistent low back pain that was aggravated by prolonged standing and walking, sudden movements such as sudden slipping and catching himself, or repetitive bending.  His pain was lessened by lying supine and bringing his legs up into a fetal position, using heat, and bending forward as if he were leaning over a grocery cart.  Plaintiff also complained of left lateral hip pain that was aggravated by walking and standing and lessened by lying down, and stated that he had difficulty opening bottles or gripping hand tools and often dropped tools while working as a mechanic.

Plaintiff Martinez had been diagnosed with diabetes in 2008 and had fluctuating glucose levels, despite being on insulin since 2009. He experienced palpitations and shortness of breath when his glucose levels were high.  He also had hypertension and dyslipidemia since 2008. Medications were Tricor, aspirin, Lisinopril, hydrochloro-thiazide, Lantus insulin, and Humalog sliding scale.

Plaintiff Martinez's activities included cooking and doing laundry one to two times per week, reading, and spending time with friends.  A physical examination showed Plaintiff was 5'6" tall and weighed 232 pounds, and his blood pressure was 130/80.  He squatted three-fourths down and his lumbar spine range of motion was reduced in all directions with pain at the end range throughout. Straight leg raise was negative.  He had tenderness at midline L5/S1 and the left paramedian area of the lumbar spine. Plaintiff had full strength in his upper and lower extremities, and his joints were stable and nontender.  Left knee and pelvis X-rays were conducted, which were unremarkable.

Dr. Dave diagnosed Plaintiff Martinez with hypertension; dyslipidemia; diabetes, not well controlled; normal stress test, 2008; low back pain, status post- motor-vehicle-accident in 1995, with no recent evaluation; left lateral hip pain, no significant findings on evaluation; and bilateral hand pain, again with normal findings on the evaluation.  Dr. Dave opined Plaintiff had "mild to moderate" limitations in prolonged standing and walking; repetitive bending; and lifting, carrying, pushing, and pulling of "greater than light to moderately weighted" objects to lumbar spine.  She also opined that "perhaps" Plaintiff had moderate limitations for repetitive gross motor manipulation through both hands, especially for "heavy" objects at that time.  T. 447-453.

On January 25, 2011, Plaintiff Martinez visited the ECMC Neurology Department for muscle spasms in his left arm.  Physical examination revealed decreased bilateral plantar reflexes.  Electromyography ("EMG"), electroencephalogram ("EEG"), and brain MRI were recommended.  T. 532-37.

An MRI of Plaintiff Martinez's thoracic spine taken January 28, 2011, was unremarkable, and an MRI of the lumbar spine revealed straightening normal lordosis of

lumbar spine and spondylitic changes with disc herniations and canal and foraminal encroachment.  T. 530-31.

On February 1, 2011, Plaintiff Martinez underwent a thoracic and lumbar spine CT scan, which revealed no acute fracture or subluxation of the thoracic or lumbar spine; no significant spinal canal or neural foraminal stenosis within the thoracic spine; mild degenerative changes of the lumbar spine (most prominent at L4-L5) and overall mild spinal canal stenosis; at L5-S1, small central and left paramedian disc osteophyte complex coming in close contact to the traversing left S1 nerve.  T. 538-539.  A CT scan of the abdomen and pelvis showed hepatic steatosis (fatty liver disease); old granulomatous disease within the left hilum; left posterior medial lung base, and spleen; and no kidney stones.  T. 540.

On February 8, 2011, State Agency medical consultant H. Findlay reviewed the medical evidence in Plaintiff Martinez's file and opined that Plaintiff could lift 25 pounds frequently, lift 50 pounds occasionally, and stand and walk for six hours out of an eight hour day.  The limitation of medium work[2] was due to Plaintiff's poorly controlled diabetes, and there was no cardiac medically determinable impairment based on lack of longitudinal history and sporadic follow-up.  T. 460-461.

On March 7, 2011, Plaintiff Martinez reported to Dr. Ahuja at ECMC with complaints of shooting low back pain radiating down his left leg.  Dr. Ahuja prescribed Neurontin and referred Plaintiff to ECMC's spine and cardiology clinics.  T. 555-57.

On April 14, 2011, Plaintiff Martinez visited the ECMC Cardiology Clinic for an evaluation.  He reported having episodes of chest tightness, palpitations, dizziness,

_____

[2] "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567.

lightheadedness, jitteriness, and shortness of breath.  He also reported nocturia and dyspnea on exertion and 8/10 low back pain.  It was noted he had been prescribed HCTZ in addition to Lisinopril for his hypertension.  HCTZ was increased.  An EKG was performed on the same day and revealed sinus tachycardia and left axis deviation.  T. 559-561.

On April 28, 2011, Plaintiff Martinez underwent another EKG which showed increased wall thickness in a pattern of mild left ventricular hypertrophy; an estimated left ventricle ejection in the range of 60% to 65%; and Doppler parameters consistent with abnormal left ventricular relaxation (grade 1 diastolic dysfunctional).  T. 562-564. He also underwent a stress test which revealed baseline hypertension/tachycardia and no evidence of ischemia.  T. 565-566.

On July 14, 2011, Plaintiff Martinez reported to ECMC upon complaints of continued low back pain.  On examination, he had discomfort with active neck range of motion and pain with passive lumbar range of motion.  Lumbar spine imaging was normal.  Plaintiff was assessed with L5-S1 herniated nucleus pulpous with radiculopathy.  There was no need for surgery.  T. 567-68.

In September, 2011, Plaintiff Martinez was diagnosed with uncontrolled diabetes mellitus Type II and hypertension at the Diabetes/Endocrinology Center of Western New York.  T. 487-88.

On October 6, 2011, Plaintiff Martinez reported to ECMC Cardiology Clinic with continued complaints of hypertension symptoms.  On physical examination, he had tachycardia and appeared anxious. Plaintiff was again advised on the importance of taking his medications.  T. 570-71.

Plaintiff Martinez returned to ECMC Internal Medicine for a follow-up several months later, in February, 2012.  Plaintiff complained of dizziness, excruciating pain behind his right eye with blurry vision and watering, and chronic back pain radiating to his left buttock and thigh.  His pain sometimes was 9/10 during which he "stay[ed] in bed."  T. 607.  He was non-compliant with his medication as he did not refill his prescriptions, and had gained 15 pounds since December 2011.  Physical examination revealed positive left straight leg raise and tenderness on his lumbar spine.  Diagnoses were likely cluster headaches; spondylosis at L4-L5/L5-S1; diabetes mellitus; hyperlipidemia; and uncontrolled hypertension.  The doctor prescribed home oxygen therapy, physical therapy, and Diovan, and continued Neurontin, aspirin, Lantus, and Humalog.  T. 574-575, 576, 607-08. 611.

**C. Non-Medical Evidence.**  Plaintiff Martinez testified at the disability hearing that he was born on July 28, 1972, was 5'6" tall and weighed 220 pounds.  He last worked as a press operator, and previously did home remodeling construction, which required him to carry more than 80 pounds and sometimes use a sledgehammer.  He had also worked as a blinds assembler, tree remover, shift supervisor, hand packager, stocker, and laborer, all of which required him to lift and/or carry between 30 and 100 pounds.  Plaintiff further testified he worked for different employers as an auto parts salesman for several years where he sometimes had to lift 50 pounds, however, some of those jobs did not involve heavy lifting.

Plaintiff Martinez told the ALJ that his back pain began after he was hit by a vehicle while riding his bicycle in 1995.  He was diagnosed with diabetes and hypertension in 2008, and began having problems with his hands in 2008 while working

with acetone and pneumatic tools at a previous job.  He felt he could not return to his previous jobs because of his pain, dizziness, and palpitations.  Sitting or standing for long periods of time caused stabbing, sometimes pulsating pain in his lower back, knee, and hip.  When he stood for long periods of time, he had to lean on things for support.

With regard to activities of daily living, Plaintiff Martinez shopped for groceries with his girlfriend and her family.  He stated he could only walk through a few aisles before needing to sit down and rest.  His girlfriend's sons helped and carried groceries into Plaintiff's second-floor apartment.  Plaintiff had to hold on the railing of the stairs to his apartment when using them, and his girlfriend would stand behind him to make sure he did not fall back if he had a back spasm.

Plaintiff Martinez testified he had been prescribed physical therapy for his back pain in addition to Naproxen, Neurontin, and Tylenol, which only "[took] the edge off" but did not completely relieve the pain.  T. 68.  He used a heating pad for his back pain three to four times at night before bed.  He was taking Lantus and Humalog for his diabetes but his glucose levels were still in the upper 200s. He experienced daily dizziness, lightheadedness, heart palpitations, shakiness, blurry vision, and shortness of breath.  Plaintiff had been recently prescribed Diovan (antihypertensive) to replace Lisinopril because it caused him dry cough and sleep apnea, but he was waiting for approval from his insurance company. He had poor sleep and felt tired during the day.

Plaintiff Martinez testified he also had "very bad" cluster headaches for which he had been prescribed home oxygen therapy, Neurontin, Tylenol and an ice pack.  He had them up to four times a week and they lasted anywhere from eight minutes to an entire day.  Plaintiff told the ALJ that had difficulty with access to treatment because he

could only use public transportation to attend his appointments, which were "pretty far" from his house.  T. 77.  He had not been to his diabetes doctor since September, 2011, because he could not get to the office.  He sometimes had difficulty getting on and off the bus because of knee pain.

Plaintiff Martinez testified he did not do any household chores except for a little bit of cleaning to help his girlfriend.  On a typical day, he stayed inside the house and sometimes took his dog for a walk, which he did only two or three times a week.  He spent most of the day lying on the couch, changing positions every 15 or 20 minutes due to back pain.  He stated that he did not have any side effects from his medications except for Lisinopril, which had been changed.  T. 43-84.

### D.  Legal Analysis: Opinion Evidence and RFC Determination.  Plaintiff

Martinez's sole challenge to the ALJ's decision relates to the evaluation of the opinion evidence and resulting RFC determination.  Pl. Mem. (Dkt. No. 11-1) at 16-22.  Specifically, Plaintiff argues that remand is required "because the ALJ's explanation as to how the medical opinion evidence was weighed was confusing, contradictory, and rendered her RFC findings impervious to meaningful review."  Pl. Mem. at 16.  For the following reasons, the Court agrees.

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v.*

*Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To

determine RFC, the ALJ must consider all the relevant evidence, including medical

opinions and facts, physical and mental abilities, non-severe impairments, and

[p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9

(N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 Fed. Appx. 231 (2d Cir.

2010).

  The Second Circuit has repeatedly cautioned that, in making the RFC

determination, "'the ALJ cannot arbitrarily substitute his own judgment for a competent

medical opinion . . . . [W]hile an [ALJ] is free to resolve issues of credibility as to lay

testimony or to choose between properly submitted medical opinions, he is not free to

set his own expertise against that of a physician who [submitted an opinion to or]

testified before him.'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting

*McBrayer v. Sec. of Health and Human Svcs.,* 712 F.2d 795, 799 (2d Cir. 1983)).

  In addition, applicable regulations specify that the ALJ should consider the

following factors in evaluating the weight to be given medical opinion evidence: (1) the

frequency of examination and length, nature, and extent of the treatment relationship;

(2) the evidence in support of the physician's opinion; (3) the consistency of the opinion

with the record as a whole; (4) whether the opinion is from a specialist; and (5) whatever

other factors tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *see

also Gunter v. Comm'r of Soc. Sec.*, 361 Fed. Appx. 197, 199 (2d Cir. 2010). Here, the

ALJ had two medical opinions presented, one by Dr. Dave, consultative examiner, and

the other by H. Findlay, State Agency review physician. She afforded "significant

weight" to the opinion of Dr. Findlay, who assessed an RFC of medium work, and did

not assign any specific weight to the opinion of Dr. Dave, who assessed mild to moderate limitations in standing/walking and moderate limitations in use of his hands. She gave "great weight" to the results of the objective medical tests.  T. 31.

The Court need not address Plaintiff's challenge to the weight determination of the consultative examiner, because the rationale behind the weight determination of Dr. Findlay's opinion is deficient.[3]  Without explanation, the ALJ first afforded "significant weight" to the opinion of Dr. Findlay, and subsequently reduced the assessed RFC from medium to light work to account for Plaintiff's spinal disorder, and then went on to state that that the opinions of *both* doctors regarding limitations in standing, walking, and use of hands were not supported by the evidence as a whole.  T. 31.

In her decision, the ALJ simultaneously afforded significant weight to Dr. Findlay's opinion, creating a strong inference that she gave little, if any weight, to Dr. Dave's opinion, while apparently discounting portions of both.  It is unclear from the written decision which portions of the opinions the ALJ credited or discredited, and how the medical opinions were reconciled.  The ALJ failed to explain specifically the conflicts between the two medical opinions as they relate to the rest of the medical record, and instead, offered conclusory statements.  The opinion analysis is therefore incomplete,

---

[3] It is also arguable whether Dr. Findlay's opinion could constitute substantial evidence even with a proper weight analysis. Written in short-hand, the opinion reads, "CURRENT RFC- medium, can lift and carry 25# freq./5- #occ., stand and walk 6 hrs. out of 8 hr. day based on poorly controlled Diabetes." T. 31, 460.  *See Whitney v. Astrue*, No. 09–CV–0484, 2010 WL 3023162, *4 (W.D.N.Y. July 29, 2010) ("The ALJ's reliance on the vague opinions of a non-treating consultative physician [in reaching his RFC determination] does not constitute substantial evidence . . . . "); *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

and the Court is unable to determine whether the ALJ properly complied with the SSA regulations for evaluating medical opinions.

While the Commissioner is correct that the objective medical tests, which were afforded great weight, "speak for themselves" to a certain extent, *see* Comm'r Mem. (Dkt. No. 16-1) at 19, her attempt to embed those test results into the weight analysis where the ALJ clearly had not done so is an impermissible *post hoc* rationalization. *See Losquadro v. Astrue*, No. 11–CV–17982012 WL 4342069, at *15 (E.D.N.Y. Sept. 21, 2012) (citing *Burlington Truck Lines v. U.S.*, 371 U.S. 156, 168 (1962) (holding that "a reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action'")).

The ALJ's erroneous evaluation of the opinion evidence warrants remand because the Court cannot conclude that the weight of the medical opinion evidence was immaterial to the outcome of the case. *Cf. Zabala v. Astrue*, 595 F.3d 402, 409-10 (2d Cir. 2010) (where medical report presented no reasonable likelihood of changing an ALJ's disability determination, exclusion of report does not require remand). Since the ALJ's RFC determination in this case is not supported by substantial evidence, that issue is remanded for further consideration.

## CONCLUSION

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 16) is denied, and Plaintiff Martinez's motion for judgment on the

pleadings (Dkt. No. 11) is granted by remand to the Commissioner for further

proceedings consistent with the findings discussed above.


**SO ORDERED.**


 _S/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE


DATED:  October 27, 2016